UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BENNETT,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DARON FORBES; and WE ARE VOLLEYBALL ELITE,<br><br>　　　　　　Defendants. | Case No.: 17CV0464-MMA (KSC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Doc. No. 7] |

On March 7, 2017, Plaintiff Andrew Bennett filed this action against Defendants Daron Forbes and We Are Volleyball Elite, alleging causes of action for intentional interference with contractual relations, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, defamation, trademark infringement, unfair competition and false designation under federal law, violation of the California Business and Professions Code, intentional infliction of emotional distress, negligent infliction of emotional distress, and copyright infringement. *See* Doc. No. 4.  Plaintiff now moves for a preliminary injunction.  *See* Doc. No. 7.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the following reasons, the Court **DENIES** Plaintiff's motion for a preliminary injunction.

## BACKGROUND

The Parties highly dispute the facts pertinent to Plaintiff's motion for a preliminary injunction, which is based solely on Plaintiff's trademark infringement claim.[1] According to Plaintiff, he founded certain "organizations for the purpose of connecting intercollegiate beach volleyball programs with high school athletes." *See* Doc. No. 7. Specifically, Plaintiff states he "is the founder of the brands and events" called: Get Noticed Beach Volleyball ("GNBV"), Endless Summer Beach Volleyball Tour ("Endless Summer" or "ESVT"), and Juniors Beach Volleyball League ("JBVL"). *See* Doc. No. 7. Plaintiff alleges he then "[brought] in Defendant Daron Forbes ('Forbes') and her organization, Defendant We Are Volleyball Elite ('WAVE') to help grow the brands for over two and a half years." *See* Doc. No. 7. Plaintiff alleges he met Defendant Forbes in 2013 and at some point thereafter,[2] they entered into a verbal agreement for a "joint venture to put on certain events." *See* Doc. No. 7. Plaintiff contends the Parties agreed that Plaintiff's organization, the Tamarack Beach Volleyball Club, and Defendant Forbes's organization, WAVE (or "Team WAVE"), would put on these events jointly, and would share "revenues, costs, and profits" equally. *See* Doc. No. 7.

Regarding GNBV, Plaintiff alleges he "came up with the name 'Get Noticed Beach Volleyball'" in April 2014, and "personally purchased a logo for the GNBV brand" in May 2014. He states that the "first joint GNBV event took place in October, 2014."[3] *See* Doc. No. 7. Plaintiff states that he paid for the permits for that event as well. *See* Doc. No. 9. "Since 2014 up until February 2017 all GNBV events were jointly managed and run." *See* Doc. No. 7.

Regarding Endless Summer, Plaintiff claims he started a business in 2012 called

---

[1] The Parties dispute one another's iterations of the facts in competing declarations under penalty of perjury.
[2] Plaintiff does not provide a date upon which the Parties entered into this agreement in either his briefs or his declarations.
[3] However, in Plaintiff's declaration in support of his reply brief, Plaintiff states that the first GNBV event took place in November 2014. *See* Doc. No. 9.

"Carlsbad Open Amateur & Junior Events," but changed the name of the business to "Endless Summer Volleyball Tour" in "late 2014." *See* Doc. No. 7. He claims he came up with the name and in October 2014, "personally purchased a logo for the Endless Summer brand." *See* Doc. No. 7. Around November of 2014, Plaintiff states the first Endless Summer event took place. Plaintiff states that the Parties' agreement regarding Endless Summer "was that all Endless Summer events that took place in Orange and Los Angeles County would be jointly managed and coordinated, but that any Endless Summer event in San Diego County could be put on by Plaintiff." *See* Doc. No. 7. Plaintiff asserts that he ran nineteen Endless Summer events without Defendants.

Regarding JBVL, Plaintiff states that "[i]n late 2016 and early 2017, Plaintiff began the process of forming a business called" JBVL, and purchased a logo for the business on October 22, 2016. *See* Doc. No. 7. Plaintiff states that he and Defendants jointly held the first JBVL event in February 2017.

According to Plaintiff, he recently decided it would be best for the Parties to cease working together, but alleges Defendants have attempted to assert control over and claim ownership of GNBV, Endless Summer, and JBVL. Specifically, the Parties began to feud regarding the management of events and on February 20, 2017, "discussions ensued between the parties about a separation and potentially having one party purchase and own certain brands outright," but the Parties never came to an agreement. *See* Doc. No. 7. Plaintiff asserts that Defendants have represented to members of the public that Plaintiff has no right to use the contested brands, and told the Association of Volleyball Professionals that WAVE "owns and operates JBVL, Endless Summer, and GNBV brands." *See* Doc. No. 7 (internal quotations omitted). Plaintiff states that Defendant Forbes "has continued to market and attempt to run events" under the disputed brand names, causing confusion to consumers. *See* Doc. No. 7.

On the other hand, according to Defendants, "Plaintiff was simply an independent contractor hired to assist Defendants' operations" in running "beach volleyball tournaments and showcases . . . to provide a platform for [] youth athletes to get recruited

by colleges and universities." *See* Doc. No. 8. Defendants contend that Defendant Forbes first met Plaintiff in 2013, and in 2014 Defendant Forbes asked Plaintiff if he would like to work "as an independent contractor to assist with Team WAVE's beach volleyball events" despite having "been warned by others who had worked with Mr. Bennett that he was not to be trusted." *See* Doc. No. 8. Because of Defendant Forbes's wariness about Plaintiff's trustworthiness, Defendant Forbes claims she never allowed Plaintiff to hold "a position of title within Team WAVE's organization" and Defendants "maintained all ownership of all aspects of the GNBV, ESVT, and JBVL brands and events." *See* Doc. No. 8. Defendants contend Defendant WAVE "agreed to be financially responsible for all the events, including the permits, insurance coverage, costs, and any losses incurred with the beach volleyball events." *See* Doc. No. 8. Defendants state that Defendant WAVE paid Plaintiff half of the net proceeds from each event, but asserts that this does not constitute sharing of profits because many expenses did not factor into his payments. Defendants assert that Plaintiff requested an ownership interest in, or control over, the brands, but Defendant WAVE denied his requests.

Regarding GNBV, Defendants contend Defendant Forbes came up with the name in March 2014, and Defendant WAVE then purchased the domain name gnbv.net on March 27, 2014, and "arranged for, paid for, and received the logo for GNBV." *See* Doc. No. 8. Defendants state that Defendant WAVE started advertising the GNBV event first and did so "as early as April 17, 2014 through its own website . . . and social media accounts." *See* Doc. No. 8. According to Defendants, WAVE "made all plans, preparations, permitting, and all sales to the participants for the first GNBV event on November 16, 2014." *See* Doc. No. 8.

Regarding Endless Summer, Defendants state that Defendant Forbes came up with the name "through discussions with Mr. Bennett," and "did the planning, organizing, and sales for the first ESVT event which occurred on December 7, 2014." Prior to that first event, Defendants state that WAVE had promoted Endless Summer events on its website for Endless Summer and on social media. Defendant WAVE only authorized Plaintiff to

use the ESVT brand on events he ran, but WAVE was not compensated for those events.

Regarding JBVL, Defendants assert that the brand is owned by Defendant WAVE, and Defendant WAVE sought permits for the first JBVL event in March 2016. On October 21, 2016, Defendants state WAVE bought the domain name for JBVL's website. Defendants argue Defendant WAVE was the first to advertise JBVL events "at least as early as October 30, 2016 through [WAVE's] own website . . . and social media accounts." *See* Doc. No. 8. Defendants claim WAVE "did all planning, permitting, and organizing of the first series of JBVL events, with the first event occurring on February 5, 2017." *See* Doc. No. 8. Defendants state Plaintiff was supposed to obtain the logo for Defendant WAVE and submit records of payment for reimbursement, but Plaintiff failed to do so.

## **LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). "A plaintiff seeking a preliminary injunction must establish that he is" (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Id.* at 20; *see JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) (stating that the plaintiff "bears the burden of establishing the merits of its claims" on a motion for preliminary injunction). The Ninth Circuit employs a "'sliding scale' approach to evaluating the first and third *Winter* elements," which dictates that "a preliminary injunction may be granted when there are 'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are also met.'" *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d at 1131–32 (9th Cir. 2011)). "Serious questions" are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *See Republic of the Philippines v. Marcos*, 862 F.2d

1355, 1362 (9th Cir. 1988). "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Id.*

Further, "[i]n deciding a motion for preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 799 F.2d 547, 551 (9th Cir.1986) (citing *Dymo Indus., Inc. v. Tapewriter, Inc.,* 326 F.2d 141, 143 (9th Cir.1964)). But, if a court does make factual findings or legal conclusions "when evaluating the merits of a preliminary injunction motion," those findings and conclusions "are not binding at trial on the merits." *See* Purdum v. Wolfe, No. C-13-04816 DMR, 2014 WL 171546, at *4 (N.D. Cal. Jan. 15, 2014) (quoting *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981)).

## DISCUSSION

Plaintiff moves for a preliminary injunction. Specifically, Plaintiff requests the Court order Defendants to, pending resolution of this action, refrain from:

1. "[R]unning any volleyball events using the GNBV, Endless Summer, and JBVL brands;"
2. "[A]dvertising, promoting, and posting on any social media platforms under the names GNBV, Endless Summer, and JBVL;"
3. "[A]dvertising, promoting, and posting on any websites under the names GNBV, Endless Summer, and JBVL;" and
4. "[U]sing the names GNBV, Endless Summer, and JBVL, in any form."

*See* Doc. No. 7.

Plaintiff's only basis for moving for a preliminary injunction is his claim for "trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a)." *See* Doc. No. 7. Accordingly, the Court analyzes the propriety of Plaintiff's requested preliminary injunction with regard to that claim only.

//

### A. Trademark Infringement

Section 1125(a) of the Lanham Act "prohibits any person from using 'any word, term, name, [or] symbol [. . .] which is 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.'" *Purdum v. Wolfe*, No. C-13-04816 DMR, 2014 WL 171546, at *7 (N.D. Cal. Jan. 15, 2014) (quoting 15 U.S.C. § 1125(a)(1)). "This section, unlike certain other Lanham Act provisions, 'protects against infringement of unregistered marks and trade dress as well as registered marks.'" *See S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999)).

To establish a claim under section 1125(a) of the Lanham Act or common law trademark infringement in California, a plaintiff must demonstrate "(1) that it has a protect[able] ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause customer confusion." *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012); *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same.").

### B. Analysis

As an initial matter, Plaintiff files evidentiary objections to Defendant Forbes's declaration in support of Defendants' opposition brief. *See* Doc. No. 10. However, "[i]n deciding on whether to grant a preliminary injunction, the court may rely on declarations, affidavits, and exhibits, among other things, and such evidence does not need to conform to the standards of Federal Rule of Civil Procedure 56." *See A Woman's Friend Pregnancy Res. Clinic v. Harris*, 153 F. Supp. 3d 1168, 1194–95 (E.D. Cal. 2015), *aff'd sub nom. A Woman's Friend Pregnancy Res. Clinic v. Harris*, 669 F. App'x 495 (9th Cir.

2016) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (stating that a district court may consider hearsay in deciding a motion for preliminary injunction)).

Further, Defendants object to Plaintiff's reply brief, supporting exhibits, and declarations thereto on the grounds that Plaintiff did not include certain facts, declarations, and exhibits in support of his motion. Thus, Defendants argue these materials are impermissibly and belatedly submitted for the first time in his reply brief. *See* Doc. No. 12. Plaintiff's submission in reply to Defendants' response in opposition is lengthy at over ninety pages and includes a plethora of information not raised in Plaintiff's motion. Defendants are correct that "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *O'M & Assocs., LLC v. Ozanne*, No. 10CV2130 AJB RBB, 2011 WL 2160938, at *6 (S.D. Cal. June 1, 2011) (quoting *United States ex rel. Giles v. Sardie,* 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000)); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). However, as discussed below, Plaintiff does not carry his burden on his motion for preliminary injunction, even considering his evidence and arguments raised for the first time in his reply brief. Accordingly, the Court **OVERRULES** Defendants' objections on those grounds as moot.

Defendants also assert evidentiary objections to Plaintiff's evidence in support of Plaintiff's reply brief, but, as discussed above, the Court may review inadmissible evidence in deciding a motion for preliminary injunction. Thus, the Court **OVERRULES** Defendants' remaining objections based on Defendants' proffered evidentiary grounds.

### i. Likelihood of Success on the Merits

Plaintiff fails to establish a likelihood of success on the merits of his trademark infringement claim because Plaintiff has not demonstrated a plausible ownership interest in the contested trademarks, as required to prevail on his claim.

"A party's ownership of a protectable mark is determined on the basis of 'priority

of use in commerce.'" *Zaffina*, 762 F.3d at 930; *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."). "For both goods and services, the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." *Champion-Cain v. MacDonald*, No. 14-CV-2540-GPC-BLM, 2015 WL 4393303, at *7 (S.D. Cal. July 15, 2015) (citing *Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001)). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku,* 96 F.3d at 1219.

However, while still persuasive evidence of first use, the Ninth Circuit has since distanced itself from its requirement that parties "must actually use the mark in the sale of goods or services." *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) (stating that "evidence of actual sales, or lack thereof, is not dispositive"). Rather, the Ninth Circuit follows a "'totality of the circumstances' approach" in determining whether a party has sufficiently shown priority of use in commerce. *See Rearden LLC*, 683 F.3d at 1205. This approach "turns on evidence showing, first, adoption, and second, [u]se in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind" "as belonging to the owner." *See id.* at 1205–06 (internal quotations omitted). Thus, "trademark rights can vest even before any goods or services are actually sold if the totality of one's prior actions, taken together, can establish a right to use the trademark." *Chance*, 242 F.3d at 1159 (internal quotations and alterations omitted); *see* 15 U.S.C. § 1127 (defining "use in commerce").

The Ninth Circuit has stated:

> [T]he district courts should be guided in their consideration of non-sales activities by factors we have discussed, such as the genuineness and commercial character of the activity, the

> determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been "rendered in commerce."

*Chance*, 242 F.3d at 1159.

Accordingly, in order to succeed on Plaintiff's trademark infringement claim, Plaintiff must show—whether through non-sales activity, sales activity, or a combination of both—that he used the subject marks in commerce *first*. For the following reasons, Plaintiff fails to demonstrate that he will be able to establish first use in commerce, and thus Plaintiff fails to show a likelihood of success on the merits or raise a serious question going to the merits of his trademark infringement claim.

Here, Plaintiff argues that the Court should find he is the owner of the marks because "he created and used them prior to the joint venture with Defendants," and "[h]e came up with the name[s][4] and paid for the logos for marks with his own funds prior to having any contact with either of the Defendants." *See* Doc. No. 7. However, Plaintiff does not make such statements in either of his declarations made under penalty of perjury. *See* Doc. Nos. 7-1, 9-1. Further, Plaintiff's declarations fail to provide factual support for those assertions, and in fact contradict them in some respects. Perhaps most importantly, Plaintiff does not provide a date—in either the briefing or his declarations—on which the Parties entered into their alleged oral agreement, rendering it essentially impossible for the Court to determine whether any action or event occurred "prior to the joint venture." *See* Doc. No. 7. Also, in contradiction to Plaintiff's argument that he came up with the names and purchased the logos for the contested brands prior to having

---

[4] Plaintiff mistakenly states "name," despite that Plaintiff is referring to all three contested marks, as demonstrated by his previous sentence and the remainder of the quoted sentence. *See* Doc. No. 7.

any contact with Defendants, Plaintiff declares that he met Defendant Forbes in 2013, but came up with the name for GNBV in April 2014, and purchased the logos for GNBV, Endless Summer, and JBVL in May 2014, October 2014, and October 2016, respectively. *See* Doc. No. 7-1.  And, according to Plaintiff's declaration and evidence, the Parties had been working together in some capacity at least as early as October 2014, contradicting Plaintiff's statement that he formed JBVL, came up with the name, and purchased the logo all before he met or entered into a joint venture with Defendants.  Thus, based on Plaintiff's evidence and arguments, it is unclear whether Plaintiff was the first to create or use the names.  *See* Doc. No. 7.

Moreover, Defendants dispute Plaintiff's assertions.  Defendant Forbes submits a declaration signed under penalty of perjury, which is directly at odds with many of Plaintiff's contentions.  Defendant Forbes states that she "conceived the idea[s]" and names for all three contested organizations.  *See* Doc. No. 8-1.  She also states that she worked with a third party to develop the GNBV logo, that Defendant WAVE purchased the GNBV logo,[5] and that Plaintiff purchased the JBVL logo on behalf of Defendant WAVE.  Defendant Forbes also states Plaintiff agreed to work for Defendant WAVE as an independent contractor in "early 2014," which presumably would have been prior to April 2014 when Plaintiff alleges he first came up with or "used" any of the contested marks.  *See* Doc. No. 8-1.

Regarding Plaintiff's "use" of the brands, even were the Court to assume that Plaintiff has sufficiently demonstrated priority of use in time, Plaintiff fails to describe the type of use that would give rise to ownership of the subject brands.  The proffered declarations and evidence provide essentially no information regarding any use of the contested marks prior to the Parties' jointly-managed events, and, accordingly, no information regarding the nature of any such use.  Plaintiff's vague argument that he "used" the brands prior to Defendants is similarly unhelpful.  Further, even assuming

---

[5] In fact, Defendants argue that Plaintiff's proffered invoice for the GNBV logo is falsified.

that, despite contrary evidence, Plaintiff created the brands and purchased their logos, such conduct is insufficient to confer ownership. *See, e.g.*, *Sengoku Works Ltd.,* 96 F.3d at 1219 ("To acquire ownership of a trademark it is not enough to have invented the mark first."); *Chance*, 242 F.3d at 1157 (stating that "[m]ere adoption of a mark without bona fide use, in an attempt to reserve it for the future, does not create trademark rights"). To result in ownership of a trademark, one's use must involve "public display," and even advertising, on its own, is insufficient. *Champion-Cain*, 2015 WL 4393303, at *7 (citing *Chance,* 242 F.3d at 1159); *Bazaar Del Mundo Inc.*, 448 F.3d at 1126 (noting that "mere advertising by itself may not establish priority of use"). Even if Plaintiff did come up with the brand names and purchase the logos, Plaintiff does not argue or provide evidence that he displayed those names and logos to the public such that "an appropriate segment of the public mind" understood the marks "as belonging to" Plaintiff. *See Rearden LLC*, 683 F.3d at 1205. Thus, Plaintiff fails to demonstrate that he used the subject marks in a way that would give rise to trademark ownership.

In sum, the lengthy record contains only unspecific, contradictory, or contested arguments and evidence regarding ownership of the contested trademarks. Thus, Plaintiff does not show a likelihood of success on the merits or raise a serious question going to the merits of his trademark infringement claim because he fails to sufficiently illustrate priority of use in time, or the nature of use require, to establish ownership of the marks.

Additionally, the Court is unpersuaded by Plaintiff's alternative argument that it should grant a preliminary injunction because the joint venture or partnership allegedly formed by the Parties owns the contested marks. As a preliminary matter, Defendants vehemently contest the existence of a partnership or joint venture.[6] Even assuming the Parties did have such an arrangement, Plaintiff's motion for a preliminary injunction is

---

[6] Under California law, "the existence of an actual partnership is [ordinarily] evidenced by the right . . . to participate in the profits and losses of the business, the contribution by the partners of either money, property or services and some degree of participation by the partners in the management and control of the business." *See* No. ED CV 13-02155 SJO (MRWx), 2014 WL 12586115, at *4. The Parties dispute the terms of their business relationship.

based solely on his trademark infringement claim,[7] which requires that he has a superior right to the marks. Further, the proposition that Plaintiff will succeed on a trademark infringement claim against a partner or co-owner of the marks is at best tenuous under Ninth Circuit and California precedent, as well as the "leading treatise on trademark law." *See Puri v. Yogi Bhajan Admin. Trust*, No. CV 11-9503 FMO (SHX), 2015 WL 12684464, at *11 (C.D. Cal. Oct. 30, 2015). As discussed above, courts addressing trademark infringement claims in this Circuit and under California common law require temporal priority of use. *See Sengoku*, 96 F.3d at 1220 ("The determinative issue is . . . which party can establish priority of ownership."); *Bazaar Del Mundo Inc.*, 448 F.3d at 1125 (stating that the plaintiff must show it adopted and used the trademarks prior to the defendant's registration). Accordingly, it would be counterintuitive to conclude that a plaintiff who uses the same marks in the same capacity contemporaneously with a business partner has priority of use over those trademarks. "As a leading treatise on trademark law explains, '[w]hen parties are co-owners of a mark, one party cannot sue the other for infringement . . . [as a] co-owner cannot infringe the mark it owns.'" *Puri*, 2015 WL 12684464, at *11 (quoting 2 McCarthy on Trademarks and Unfair Competition § 16:40 (4th ed. 2015)); *see also Sweet Music, Inc. v. Melrose Music Corp.*, 189 F. Supp. 655, 659 (S.D. Cal. 1960) ("A co-owner may not maintain an action against another co-owner for copyright infringement, so plaintiff's claim for infringement must be denied.").

For the above reasons, Plaintiff does not demonstrate a likelihood of success on the merits of his trademark infringement claim nor raise a serious question going to the merits of the claim. While the Court must deny Plaintiff's motion on that basis alone, the Court also notes, below, that even were Plaintiff able to raise a serious question going to the merits of his claim, Plaintiff does not show that the balance of equities tips "sharply" in his favor or that an injunction is in the public interest. *See Ass'n des Eleveurs de*

---

[7] In other words, Plaintiff must meet the requirements for a preliminary injunction based on his cause of action for *trademark infringement*, rather than argue as a general assertion that Defendants do not own the trademarks themselves or that there is a need to preserve the status quo.

*Canards et d'Oies du Quebec*, 729 F.3d at 944.

### ii. Balance of Equities

Where a plaintiff cannot show a likelihood of success on the merits, but raises a serious question on the merits, the plaintiff must show that the balance of hardships tips sharply in the plaintiff's favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137–38 (9th Cir. 2011). Due to the contested nature of the facts, it is difficult to determine the balance of equities in this case. However, even under Plaintiff's iteration of the facts, Plaintiff is not prohibited from running events under the contested names, contrary to his assertion that he would not be able to. Also, Plaintiff argues that if he did run events under those names, it would cause confusion. However, he argues, and produces evidence indicating, that consumers are already confused about the Parties' current relationship. Plaintiff states his position is that neither party should use the brands until resolution of this litigation. However, that would cause Defendants substantial harm, as Plaintiff does not dispute that Defendants have several future events lined up.[8] Further, Plaintiff's contention that Defendants' future events will cause a negative impact on the goodwill of the brands is conclusory and speculative. Plaintiff does not describe why the occurrence of such events would "likely destroy the brand and goodwill associated with the brands." *See* Doc. No. 7. Accordingly, Plaintiff has not satisfied his burden to show the balance of equities tips sharply in his favor.[9]

### iii. Public Interest

Even were the Court to find Plaintiff raises a serious question on the merits of his trademark infringement claim, and that the balance of equities is strongly in Plaintiff's favor, this would "not end [the] analysis, as the preliminary injunction must also be in the public interest." *See Cottrell*, 632 F.3d at 1138. Here, Plaintiff requests an order prohibiting Defendants from holding any volleyball events under the contested names.

---

[8] On the other hand, Plaintiff does not state that he has any events planned under the contested names.
[9] In fact, Plaintiff does not argue the balance tips "sharply" in his favor because Plaintiff does not frame his arguments under the "serious questions" standard. *See* Doc. No. 7.

1    This would mean that Defendants would either have to change the names of all of the
2    currently scheduled events, undoubtedly causing concern and confusion to high school
3    athletes planning to participate, or cancel them entirely, causing extreme detriment to
4    high school participants hoping to compete and/or be noticed by college recruiters.
5          On the other hand, Plaintiff argues that public interests weigh in favor of granting
6    the injunction because members of the public believe that the future events will not
7    involve Plaintiff.  Plaintiff states, "they have no idea that the individuals running the
8    events will be different than those from the joint venture." *See* Doc. No. 7.  Thus, he
9    argues, the public has an "interest in not being deceived." *See* Doc. No. 7.  However,
10   Plaintiff undermines his argument by stating in one of his declarations that Defendants
11   have told "parents and individuals in the volleyball community" that he is "no longer
12   associated with any of the disputed brands." *See* Doc. No. 7-1.  Thus, many of the
13   participants are unlikely to expect Plaintiff to be present.  Based on the foregoing, public
14   interests weigh against granting the requested injunction.  *See Cottrell*, 632 F.3d at 1138
15   ("We will not grant a preliminary injunction . . . unless those public interests [in favor of
16   an injunction] outweigh other public interests that cut in favor of *not* issuing the
17   injunction.").
18         For all of the above reasons, the Court declines to "employ[] the extraordinary
19   remedy of injunction" in this case. *See Winter*, 555 U.S. at 24.  Based on the Court's
20   conclusions, the Court need not address the likelihood that Plaintiff would suffer harm in
21   the absence of a preliminary injunction or Defendants' remaining arguments, such as
22   their invocation of certain equitable defenses.
23   //
24   //
25   //
26   //
27   //
28   //

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for a preliminary injunction. *See* Doc. No. 7.

**IT IS SO ORDERED**.

Dated:  June 9, 2017

*/s/ Michael M. Anello*
Hon. Michael M. Anello
United States District Judge